404    Appellate Courts of Illinois.

Mandelovitz v. New Amsterdam Casualty Co., 216 Ill. App. 404.

## M. Mandelovitz, Appellee, v. New Amsterdam Casualty Company, Appellant.

### Gen. No. 24,592.

1. Insurance, § 362*—*when insurer estopped from insisting that burglary policy was forfeited.* Where an insured is covered at one location by an open stock policy of burglary insurance, and he moves his stock of goods to a different location, notifying the company so that the policy may be amended to cover the goods at the new location, and the insurer does not treat the policy as being forfeited, but states that the new location will have to be inspected, and a loss occurs before the inspection is made, such privilege of inspection is waived and the insurer is estopped from insisting that the policy is forfeited.

2. Insurance, § 321*—*right of insurer to waive privilege of inspection of new location of goods covered by burglary policy.* The right of inspection by agents of an insurer where goods covered by a policy of burglary insurance are moved to a new location is for the benefit of the insurer, so that the risk may not become greater, and such privilege may be waived at the election of the insurer.

3. Insurance—*difference between burglary policies indemnifying against loss from specified place and loss of parts or whole of changing stock of goods.* Practically considered there is no difference between a burglary insurance policy which indemnifies against loss by theft from a specified place and a policy which indemnifies against the loss by theft of parts or the whole of a changing stock

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of goods, as the insured pays a premium so as to suffer no loss in case his goods are stolen, and the insurer undertakes to make good if loss occurs.

Appeal from the County Court of Cook county; the Hon. J. J. COOKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed January 28, 1920.

BULKLEY, MORE & TALMADGE, for appellant.

FISHER, BOYDEN, KALES & BELL, for appellee; J. F. DAMMANN, JR., of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

By this appeal the New Amsterdam Casualty Company, the defendant, seeks to reverse a judgment for $1,000, obtained by M. Mandelovitz, the plaintiff, in a suit on an open stock burglary insurance policy.

Some time in the year 1915—the policy is not dated —the defendant issued to the plaintiff a "Mercantile Open Stock Burglary Insurance Policy," indemnifying him to the extent of $1,000 for the period between noon December 7, 1915, and noon December 7, 1916. "For loss of merchandise  *  *  *  occasioned by its felonious abstraction from within the interior of the premises," "669 West 12th street, Chicago, Illinois." The plaintiff was in the clothing business, and owned a stock of goods at that place. He got the burglary policy through his own agent, one Umanski, an insurance broker. On August 29, 1916, the plaintiff started to move his stock of goods from 669 West 12th street to 1240 South Halsted street. It took him 4 or 5 days to move it. On Tuesday morning, September 12, 1916, so Umanski testified, he took the plaintiff's policy to the office of the defendant company and told one Miss Goldsmith, an employee of the defendant, that he wished the policy transferred to the new location at 1240 South Halsted street. His testimony, further, is:

406    Appellate Courts of Illinois.

Mandelovitz v. New Amsterdam Casualty Co., 216 Ill. App. 404.

"She told me all right, we will inspect it and we will let you know," and that when he asked her how long it would take, she answered, "about a day." He left the policy with her.

On Friday, September 15, according to Umanski, he called up the defendant's office and some one said Mr. Nichols "was very busy, but he surely will do it tomorrow morning, and I asked her, I don't remember whether it was Miss Goldsmith at that time that was speaking, or someone else in the office,   *   *   *   is Mandelovitz insured, and she said, 'Yes, sir.' "

Miss Goldsmith testified that the policy was first brought in on Thursday, September 14, between 5:20 and 5:30 p. m. She says Umanski asked to have it transferred, and that she asked him when the plaintiff began to move, and that she told Umanski "that we would have to make an inspection"; "transferring all stock burglary policies were subject to the company's approval, just as a new risk, and that we would have to inspect it, and if it met with the company's approval we would endorse it," etc. She stated, further, that she turned it over to the inspection department the next morning, Friday, the 15th, giving the policy to one McBarron, an inspector, and asked him to make an inspection. She says Umanski did not call her up on Friday.

McBarron was inspector for the defendant and also for another agency. It was the custom of the defendant to send stock policies, such as the one in question, when there was a change of location of the property insured, to the home office in Baltimore for its sanction. If the policy was satisfactory it would be so noted and the policy returned as valid at the date the inspection was made. Miss Goldsmith testified that she told Umanski that the inspection would have to be passed upon by the company. McBarron, the inspector, according to her testimony, reported to her every day in order that she might check up the inspections which

he had made, and on Saturday morning he told her that the only one he had left was the plaintiff's and that he would make the inspection that morning. He went to the premises on Saturday morning about 9:00 or 9:15, September 16, but when he got there he was informed that the premises had been burglarized the night before. The following facts were agreed upon by the attorneys for both parties; that a burglary or a felonious abstraction, occurred on the premises of the plaintiff, Mandelovitz, at 1240 South Halsted street, some time between the evening of September 15 and the morning of September 16, 1916, and that he sustained a loss of at least $1,000. It is the evidence of one Carpenter, an insurance agent, familiar with the customs and usages in burglary insurance, that where the assured is covered at one location on an open stock policy and then he moves and transfers his stock to a new and different location, and he is desirous of having his old policy amended so it will cover him in his new and changed location, the company, while making an inspection and determining whether or not they will carry him at the new location, does not carry, or, in other words, continue the insurance. On the other hand, one Clancy, an expert, stated that, if the new location was a poor one, it was the duty of the company to repudiate the policy at once, but if the new premises were not within a prohibited area, then to make an inspection within 24 hours, and meanwhile cover the risk.

The cause was tried before a jury and a verdict recovered and a judgment entered in the sum of $1,000 in favor of the plaintiff.

The question arises, did the insurance continue and cover the merchandise at the new location at the time of the burglary? When the company was notified on the evening of September 14, 1916, which is the date according to the evidence of the company, the policy could have been forfeited, treating the removal of the

408        APPELLATE COURTS OF ILLINOIS.

Mandelovitz v. New Amsterdam Casualty Co., 216 Ill. App. 404.

goods as a breach of warranty. As the court said in *Williamsburg City Fire Ins. Co. v. Cary,* 83 Ill. 453: "It might well treat the removal of the goods as a breach of a warranty implied from a description of the location of the goods, and declare the policy forfeited." That, however, it did not do. Umanski, the agent of the plaintiff, when he delivered the policy to Miss Goldsmith, the agent of the company, was asked by her, when did the plaintiff begin to move, and was then told that the company would have to make an inspection. She testified that transferring stock burglary policies was subject to the company's approval just as a new risk and that they would have to inspect it and if it met with the company's approval they then indorsed it. On the other hand, Umanski states that when he delivered the policy to her he asked her how long the inspection would take and she said about a day, and that on Friday, September 15, he called up the defendant's office and that some one in the office when he asked the question, "Is Mandelovitz insured?" answered, "yes."

The reasoning in the *Williamsburg* case, *supra,* is to the effect that the removal of the merchandise to another location does not *ipso facto* render the policy void; that the inspection which the law imposed upon the assured is for the benefit of the insurer, that is, that the risk may not become greater, but that privilege at its election it may waive; and where a waiver is shown the insurer "will be estopped from insisting upon that which is inconsistent with what he has said and done and which affects the rights of others."

If the jury believed that the policy was left with the defendant company on Tuesday morning; that the agent of the company then stated that an inspection would take about a day; that Umanski called up the office of the company on Friday and was answered when he asked, "Is Mandelovitz insured?" "Yes, sir," then under the law, as stated in the *Williamsburg*

case, "that the company may at its election waive the privilege of inspection," the verdict must stand on the ground of a proven estoppel.

Counsel for the defendant contend that there is a legal and substantial difference between a policy which indemnifies against loss by theft from a specified place and a policy which indemnifies against the loss by theft of parts or the whole of a changing stock of goods. Hypercritically considered, there is a distinction, but, practically considered, the indemnification in both cases is the same; the insured paid his premium so as to suffer no loss in case his goods were stolen, and the insurer undertook to make him whole in case of loss.

Finding no error in the record the judgment will be affirmed.

*Affirmed.*