**ALL STATES TRAILER COMPANY,**
**Plaintiff-Appellee,**

v.

**The AMERICAN INSURANCE COM-**
**PANY et al., Defendants-**
**Appellants.**
**No. 11660.**

United States Court of Appeals
Seventh Circuit.
July 6, 1956.

John P. Gorman, Chicago, Ill., Donald N. Clausen, Herbert W. Hirsh and Clausen, Hirsh & Miller, Chicago, Ill., for appellants.

Virgil C. Lutrell, Chicago, Ill., W. Russell Arrington and John G. Poust, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Chief Judge.

This is an action to recover upon four policies of fire insurance covering contents of plaintiff's manufacturing plant. The principal defenses raised by the insurers were that the property was covered only while in the building located at 5832 South Green Street, Chicago; that at the time of the fire, such property had been moved to and was located in a building at 5807 South State Street, Chicago, and that the insurers had expressly refused to consent to a transfer of the insurance coverage from the Green Street to the State Street building. The trial was to a jury. A previous trial to a jury had resulted in a verdict for the defendants but a new trial was ordered. At the close of plaintiff's evidence in the second trial, the plaintiff moved for a directed verdict which motion was denied. At the close of all the evidence plaintiff again moved for a directed verdict. This time the trial court granted the motion and directed the jury to render a verdict in favor of the plaintiff and against each of the four defendants. Judgment was entered upon the verdict and this appeal followed.

Plaintiff was a corporation engaged in the manufacture of mobile house trailers. From 1945 to February, 1951 plaintiff's operations were conducted in leased premises located at 5951 South State Street, Chicago. In March, 1951 plaintiff leased premises at 5832 South Green Street to which location most of its manufacturing operations were moved. Thereafter, plaintiff acquired title to the premises at 5807 South State Street, and by July 6 or 7, 1951, plaintiff had moved its operations to that building. The fire occurred on September 8, 1951.

For some years plaintiff had procured a substantial portion of its insurance

through Joseph Lipshutz & Company, a firm of insurance brokers. All of plaintiff's dealings for insurance were handled on its behalf by its president, George Blosten. Blosten had been a friend of Joseph Lipshutz for some twenty years, and was also well acquainted with his son Ira who was likewise active in the insurance brokerage firm.

In March, 1951, plaintiff instructed the Lipshutz firm to procure $20,000.00 of fire insurance coverage on the contents owned by plaintiff at the Green Street building. The Lipshutz firm procured for plaintiff the four policies of fire insurance involved in this litigation; said policies were issued on April 26, 1951, and were procured through the L. G. Stewart Insurance Agency, a partnership conducted by L. G. Stewart and Charles LaBow. It is clear that in the transaction involving the four insurance policies, the Lipshutz firm acted as agents for the plaintiff, and the Stewart Agency acted as underwriting and issuing agents for the four defendant insurance companies. Each of the four policies contained a provision that the goods were insured at the Green Street address "and not elsewhere."

About July 10 or 11, 1951, Blosten gave the four policies to Joseph Lipshutz asking him to procure the transfer of the coverage from the Green Street Building to the State Street building. He also requested that the term of the policies be increased from one to three years.

About July 11, 1951, Lipshutz sent a written memorandum to the Stewart Agency, attention of Mr. LaBow, making a request to transfer the insurance coverage to the State Street location. Skerke, a fire insurance underwriter employed by the Stewart Agency, after discussing the matter with LaBow, called the Lipshutz firm's office by telephone and told Esther Rubins who was, at that time, in charge, that the Stewart Agency was unable to accept the transfer of the coverage to the new location. Blosten identified Esther Rubins as an employee or an associate of the Lipshutz firm who had worked there many years.

In the early part of August, 1951, Ira Lipshutz personally visited LaBow, and asked why the Stewart Agency would not grant the request for a transfer of the coverage. Prior to that time the Lipshutz firm had obtained other fire insurance for plaintiff through the Stewart Agency totaling $65,000 on the State Street building and $10,000 on the contents at that location. LaBow explained to Lipshutz that a total of $75,000 insurance was all that the Agency could handle at that location, explaining about an increase in fire hazards. Lipshutz requested LaBow to write him a letter explaining why the request for an additional $20,000 on the contents of the State Street building could not be granted. LaBow testified he wrote such a letter to Lipshutz, and he identified a copy of that letter which was marked "Exhibit 1" for identification. Blosten stated that he knew of the existence of such a letter. The Court admitted "Exhibit 1" in evidence, but later reversed its ruling stating that defendants had not laid a sufficient foundation.

The Lipshutz Agency never notified the plaintiff of the refusal of insurers to transfer the coverage. At the time of the trial herein, there was pending in the Superior Court of Cook County, Illinois, an action brought by plaintiff against the Lipshutz firm seeking recovery because of the negligent failure of its brokers to obtain a transfer of insurance coverage, and to keep the property of plaintiff insured. The Court, however, refused to receive in evidence the complaint in that action.

The Stewart Agency did not return to Lipshutz or the plaintiff the policies of insurance which had been handed to them for an endorsement of the transfer of coverage. Although some comment is made as to the alleged failure of defendants to return the unearned portion of the insurance premium, as a matter of fact, no premiums had been paid by plaintiff for the policies here in question. This point is not of great importance, however, because there was a credit arrangement existing between the Lipshutz firm and the Stewart Agency.

The District Court, relying upon Williamsburg City Fire Insurance Co. v. Cary, 1876, 83 Ill. 453, and Mandelovitz v. New Amsterdam Casualty Co., 216 Ill. App. 404, directed a verdict for the plaintiff holding that defendant insurance companies had waived the location of the property as a defense apparently on the ground the agent of the insurance companies retained possession of the policies and said policies had not been canceled.

■ We think it is settled law in Illinois and elsewhere that when personal property is insured under a fire policy at a designated location "and not elsewhere" the insurer is not liable if a loss occurs at a different location, unless the insurer has expressly consented to a transfer of such coverage or there is a waiver of this provision by the insurer or the insurer is estopped by its conduct from asserting such a defense. Liebenstein v. Aetna Insurance Co., 45 Ill. 303, 304; Jacobson v. Liverpool, London & Globe Insurance Co., 135 Ill.App. 20, 23, affirmed 231 Ill. 61, 83 N.E. 95; Couch "Cyclopedia of Insurance Law", Vol. 3, § 747c, Page 2441.

The court below and the plaintiff here rely principally upon Williamsburg City Fire Insurance Co. v. Cary, 83 Ill. 453. That decision was expressly approved in 1920 in Mandelovitz v. New Amsterdam Casualty Co., 216 Ill.App. 404.

In the Williamsburg case, after the personal property had been removed, the insurance company's local agent was notified of the removal and was asked to consent to carry the risk in the new location. Whether the agent actually gave his consent was an issue in the case which the Illinois Supreme Court held was resolved by the finding in plaintiff's favor. Although the insurance policy provided that either party could rescind the insurance contract, the insurance company did not cancel the policy. The court stated the law to be that the removal of goods would give the insurance company the right to cancel the policy and if no notice of removal had been given before the loss occurred, the insurance company would not be liable.

However, the court held the insurer had waived the provision as to the location of the insured goods. The court did use some broad language which, taken alone, might seem to give some support to plaintiff's theory in the case at bar.

■ However, the basis of the Williamsburg decision is that in the absence of any other indicia indicating the intent of the insurer, the court held that waiver arose because the insurer failed to cancel the policy after the insured gave notice of the removal of the goods. The decision was actually based upon non-action of the insurance company. The court said, 83 Ill. at page 456: " * * * The non-action of the company was an indication it was willing to continue the policy in force, and may reasonably have inspired that belief in the mind of the assured." The court also said, 83 Ill. at page 455: " * * * It (insurance company) might well treat the removal of the goods as a breach of the warranty implied from a description of the location of the goods, and declare the policy forfeited. But no action was taken, and after notice, the assured might infer the company was willing to carry the risk notwithstanding the change in location of the property." It is obvious that the Williamsburg decision does not require, as a matter of law, that the plaintiff, in the case at bar, recover judgment. The knowledge of the Lipshutz firm of the insurers' affirmative refusal to transfer the coverage, as a matter of law, must be regarded as the knowledge of the plaintiff.

In Mandelovitz v. New Amsterdam Casualty Co., supra, a burglary policy was involved covering loss due to felonious abstraction from the interior of a designated location. Four or five days after the insured moved his goods to a different address, he notified the insurance agent and requested a transfer to the new location. The insurer neither consented to nor rejected the request saying that an inspection of the premises was required and would take about a day. A few days later an inspector called and learned that a burglary had occurred the previous night. Another

element in the case was that the next day, after the request for change in coverage had been made, the insured's agent called the insurance company and made inquiry as to whether Mandelovitz was covered, and the representative of the insurance company replied that he was. The Illinois Appellate Court affirmed the judgment for the plaintiff stating, 216 Ill.App. at page 409: " * * * the verdict must stand on the ground of a proven estoppel." The Court announced that it was relying on the Williamsburg case. Again, the reasoning of the Court was that the insurer was guilty of conduct which led the insured to believe that he was covered at the new location.

The broad language used in the Williamsburg opinion which the plaintiff here seeks to embrace, must be interpreted and read in the light of the two important facts in that case, 1) the insurance company's agent had consented to the change in location and thus had misled the insured; 2) there was complete non-action by the insurance company.

In the case at bar the insurance companies not only did not consent to the removal of the goods, but informed plaintiff through their agent that the requested consent could not be given. Furthermore, plaintiff cannot contend that it removed any of its property to the State Street location in reliance upon any action or non-action of the insurers. The first request for a transfer of coverage was on July 11, 1951, while the change in the location of the property was substantially completed by July 6 or 7, 1951 at the latest.

It appears from the evidence that plaintiff's lease on the Green Street property expired on July 1, 1951. It is without dispute that for nearly a week thereafter all of the property covered by the insurance policies in question remained at the Green Street address. We have read carefully all of the testimony given at the trial and have examined the documentary exhibits which were received, and we find no evidence to establish that defendants or their agents were ever informed by the plaintiff or its agent that

all of its property had been removed from the Green Street premises, or that such goods as had been removed would remain permanently in the new location. The memo from Lipshutz to Stewart read: "Kindly transfer the above-captioned policies to cover at the assured's new location: 5807–23 South State Street. Please forward the necessary endorsements * * *." Possibly a jury would be entitled to make an inference from this memo that the companies had been so informed, but it is just as certain the memo does not establish, as a matter of law, that defendants were informed that none of plaintiff's goods would thereafter be located at the Green Street premises.

If, in the instant case, defendant insurance companies were not informed that plaintiff would no longer make any use of the Green Street property, they had the right to assume that some of plaintiff's property would be located at the Green Street premises. The existing policies would cover any loss occurring at that location. This would not be a far-fetched inference, as in the period immediately before July 1, 1951, plaintiff's machinery and inventory had been divided between another State Street location and the Green Street premises. Under such circumstances, the insurers had no right to cancel the policies for a breach of conditions therein.

We have given consideration as to whether judgment should be ordered for the defendants who also made a motion for a directed verdict. Because Illinois does not seem to be in accord with the majority view, we have decided that a new trial should be had. We think the trial court should have submitted the case at bar to a jury with appropriate instructions, and was in error in directing a verdict for the plaintiff.

The majority view is indicated by a quotation from Steil v. Sun Insurance Office of London, 171 Cal. 795, 155 P. 72. The court said, 155 P. at page 74: " * * * In order to continue the insurance upon the goods, or, in other words, to carry it to the goods in the new

location, something more was required than a mere notification by the insured to the insurer of the fact that the goods were, or were about to be, removed. That fact alone would only suspend the insurance risk. * * * "

However, the Williamsburg, Mandelovitz and other Illinois cases which we have read convince us that Illinois law places a greater burden on the insurance company. In the instant case, a jury or a court should be permitted to make a finding as to just what information the defendant insurance companies had received as to the prospective use by plaintiff of the Green Street premises. All that we have decided here is that, upon the record before us, it cannot be determined either way as a matter of law.

In view of the necessity for a new trial, we shall advert to a ruling of the trial court excluding Exhibit 1 which LaBow identified as a copy of a letter which he wrote to the Lipshutz Agency explaining why consent could not be given to a transfer of the coverage. He explained in detail the mailing procedure in his office, and how he placed it in the "mailing-out box". We think Exhibit 1 should have been received in evidence.

Reversed and remanded for a new trial.