**B. SCHWARTZ & COMPANY, an Illinois corporation now known as Beness Enterprises, Inc., Plaintiff-Appellee,**

v.

**Dudley Franklin HEPBURN, on his own behalf and on behalf of the several persons bound by the policies of insurance numbered 57/M49, 57/M374, 57/M583, and 57/M322, Defendants-Appellants.**

No. 13448.

United States Court of Appeals
Seventh Circuit.

May 1, 1962.

As Modified on Denial of Rehearing
June 5, 1962.

Stephen A. Milwid, Chicago, Ill., Lord, Bissell & Brook, Chicago, Ill., of counsel, for appellants.

Robert Marks, Chicago, Ill., Marks, Marks & Kaplan, Chicago, Ill., of counsel, for appellee.

Before CASTLE and KILEY, Circuit Judges, and MERCER, District Judge.

KILEY, Circuit Judge.

This diversity suit is to recover damages under certificates of insurance covering plaintiff's loss in shipments of frozen meat imported from New Zealand to Chicago. The meat was found to be contaminated. It was reconditioned and plaintiff paid, and seeks to recover, the costs of reconditioning. Verdict and

judgment were for plaintiff, and defendants have appealed.

Plaintiff, an Illinois corporation, in 1957 was in the business of importing and exporting meats.[1] Defendant Hepburn is appearing on behalf of himself and of other underwriters of the insurance involved herein in cooperation with Lloyds of London. Plaintiff purchased the New Zealand meat for a price which included the cost of the meat, the insurance, and transportation charges to New York. The seller, in accordance with this C.I.F. purchase, sent with the shipment the certificates covering plaintiff's interest[2] and other documents including a certificate of inspection of the meat by the New Zealand government.

The meat left New Zealand in three ships which arrived in United States ports of entry on August 1, 9, and 14, 1957. Some of the meat in the first shipment was sold by Tupman & Thurlow, Inc., a New York broker, to plaintiff, and was transported to Libby, McNeill & Libby in Chicago, to whom plaintiff had resold it. This meat was reinspected[3] by the Department of Agriculture, found to be contaminated, and "retained" by the Department.

Notice of the results of this inspection was given Tupman & Thurlow, and its representative Hamilton came to Chicago from New York with Captain Parry of Toplis & Harding, Wagner & Glidden, Inc., named as New York agent of Lloyds of London in the insurance certificates. They also re-examined the meat and Parry arranged with the Department officers in Chicago to recondition the contaminated meat in lieu of rejection of the entire shipment. The cost of reconditioning was agreed on by plaintiff and Parry, and the work was done.

Plaintiff's experience with the Libby, McNeill & Libby meat made it aware of the danger that much more meat which it had purchased from New Zealand and which was in transit on the second and third ships was probably also contaminated. Thereupon Dr. Murphy, representing the Department of Agriculture, agreed that, on the basis of what had happened to the first quantity of meat, he would permit the meat in transit to pass through the port of entry to Chicago where, if inspection showed the meat was contaminated, it too could be reconditioned. Parry was present when this arrangement was made. Murphy alerted the inspectors at the port of entry, and the meat on the second and third ships was passed through to Chicago. The meat was contaminated. Parry spent two or three weeks supervising the reconditioning. Then the meat was reinspected by the Department and "passed for movement and use in domestic commerce." Parry made a written report to Toplis & Harding. Thereafter, defendants disallowed plaintiff's claim for the cost of the reconditioning work, on the basis of the "rejection clause"[4] in the insurance certificates.

The ordinary marine insurance policy covers a shipment from the time it is placed on the vessel, and any loss that occurs before that time is not covered.[5] The rejection insurance in suit is not so limited and covers rejection "for any reason whatsoever." Plaintiff paid four

---

1. It is successor in interest to Meat Export, Inc., the original purchaser of the meat shipments described, as a result of a merger of the two corporations in September of 1957.

2. Twenty-nine substantially similar certificates are involved. Four of the certificates were issued in the name of Meat Exports, Inc., which was also assignee of the remaining twenty-five.

3. A sample inspection of the first shipment was conducted by Government officials in New York, the port of entry, and found acceptable.

4. "Rejection Clause—
   This insurance covers rejection and/or condemnation at port of entry by the United States and/or Canadian Governments or Agencies or Departments thereof for any reason whatsoever. * * *"

5. It is agreed that the contamination here was due to causes in New Zealand and did not occur en route to New York or from New York to Chicago.

times more for this insurance than it would have paid for non-rejection insurance. Under the rejection clause, if the meat had been rejected at New York by United States Department of Agriculture inspectors, defendants would have been required to pay the full value of that meat. In this clause plaintiff had the burden of using his best efforts to minimize any loss.

The essential factual issue at the trial was whether Captain Parry reached an understanding with plaintiff's owner Schwartz, in Chicago, under which, if Schwartz could arrange with Dr. Murphy to have the meat passed through the port of entry to Chicago, Toplis & Harding would pay the costs of reconditioning whatever meat was found contaminated.

The vital question of law defendant raises is whether, under Illinois law, even if Captain Parry was found to have reached that understanding with Schwartz, defendant can be estopped from avoiding liability upon the express provision for rejection "at port of entry." He relies upon that limitation to exclude from coverage the reconditioning transaction in Chicago.

■ We think the port of entry limitation in the rejection clause is a provision inserted for the benefit of the defendant so that the risk might not become more hazardous. And its right to absolve itself from liability because of the increased risk is a "privilege" which may be waived by its conduct. Williamsburg City Fire Ins. Co. v. Cary, 83 Ill. 453 (1876); Mandelovitz v. New Amsterdam Cas. Co., 216 Ill.App. 404 (1920); All-States Trailer Co. v. American Ins. Co., 7 Cir., 234 F.2d 783, 786 (1956).

In Spence v. Washington Nat. Ins. Co., 320 Ill.App. 149, 50 N.E.2d 128 (1943) the court in dictum stated that an insurance contract for one subject matter cannot be changed into another for a different subject matter by insurance agent's mistake in describing the wrong property; and in Commonwealth Ins. Co. of N. Y. v. O. Henry Tent & Awning Co., 7 Cir., 287 F.2d 316 (1961), the court repeated the Spence dictum as the "Illinois rule" but the provision relied on by insurer was there construed to be for the benefit of the insured. These cases do not militate against our finding.

■ If the jury, therefore, could reasonably infer from the testimony that Captain Parry had apparent authority to do what plaintiff says he did, and to further infer that he did it, defendant is estopped from asserting its non-liability on the ground that the meat was not rejected at New York port of entry.

The next question is whether there is substantial evidence to support a finding that Parry had authority to make a binding representation that could give rise to an estoppel. The answer depends on whether Toplis & Harding held Parry out as having the authority under such circumstances, that Schwartz as a reasonably prudent person could infer that Parry had the authority to reach the understanding and make the agreement plaintiff insists was made in Chicago. Faber-Musser Co. v. William E. Dee Clay Mfg. Co., 291 Ill. 240, 126 N.E. 186 (1920).

The jury could reasonably have found the following facts, favorable to plaintiff: Parry came to Chicago after plaintiff gave notice of the results of the inspection of the Libby meat to Toplis & Harding and was introduced to Schwartz as its representative. Parry made an arrangement with Dr. Murphy of the Department of Agriculture under which the Libby, McNeill & Libby meat, not involved in this suit, could be reconditioned instead of being rejected, at a considerable benefit to the insurer. Parry was shown plaintiff's insurance certificates and was informed of the greater quantity of meat in transit. He knew that if the meat in transit was contaminated and was to be inspected in New York it would probably be rejected, giving rise to an obligation on the part of defendants to pay the full value of the meat. He agreed with Schwartz that if the latter could make an arrangement with the Department covering the meat in transit, similar to that covering the Lib-

by meat, the reconditioning costs would be paid by defendant. Schwartz made the arrangement with Dr. Murphy and Parry reassured Schwartz as to the reimbursement of reconditioning costs. Parry returned to New York and made his report. He came back to Chicago when the meat from the second and third shipments arrived, and he stayed in Chicago during the reconditioning process, reassuring Schwartz from time to time that the costs would be repaid. After the meat was reconditioned, reinspected, and passed into commerce, he obtained necessary documents from plaintiff's officials in Chicago and prepared plaintiff's claim.

The jury could reasonably infer further that had Parry not made the agreement plaintiff would not have arranged to have the meat passed to Chicago, and that relying on Parry's apparent authority and his promise, Schwartz changed his own position from probable claimant for the full value to claimant for reconditioning costs.

■ The jury was not required to find in favor of defendant by virtue of any of the oral or documented testimony in support of its theory that Parry was merely a surveyor with no authority to adjust. There was testimony on the abstract difference between adjustors and surveyors. But calling Parry a surveyor did not change what Parry did, and what he did tells what he was. Wohl v. Yelen, 22 Ill.App.2d 455, 459, 161 N.E. 2d 339 (1959). The case of Hotel Atlantis, Inc. v. Peerless Cas. Co., 2 Cir., 285 F.2d 257 (1961) does not aid defendant. There was "no indication" in that case that Poston was to do anything but investigate the matter. Nor is he helped by All-States Trailer Co. v. American Ins. Co., 7 Cir., 234 F.2d 783 (1956). There, in reversing a directed verdict for insured, it was held to be a jury question whether defendant insurer had waived a "locational limitation" in the policy. And there was no other fact that precluded the verdict.

■ We conclude that there was substantial evidence of Parry's authority to make the agreement extending the coverage.

The court refused to instruct the jury peremptorily at defendant's request that in insurance contracts plaintiff warranted that the meat was in good condition, etc., before the shipment left New Zealand and that unless these facts were true plaintiff could not recover. Defendant argues that this was error.

■ The rejection clause is an undertaking by insurer separate from the ordinary marine insurance contract. It is a rider to the marine policy of narrower coverage and is stamped on the back of each certificate of insurance. It is not made subject to the general language of the marine policies, and if inconsistent with them, prevails over them. Berns & Koppstein, Inc. v. Orion Ins. Co., Ltd., 170 F.Supp. 707, 719 (S.D.N.Y.1957), aff'd. 2 Cir., 273 F.2d 415 (1960); 22 I. L. & P., Insurance § 145 (1956). The court did not err in refusing to give the proffered instruction. Neither did the court err in refusing to give an instruction on plaintiff's burden of proving "waiver * * * of conditions and terms." Plaintiff's burden was to prove its theory of estoppel, and the introduction of waiver might tend to confuse the jury. We see no other error in the instructions which would require reversal in this case.

The court instructed the jury properly on the plaintiff's theory of Parry's apparent authority and the estoppel of defendant to rely on the "port of entry" limitation in the rejection clause to avoid its obligation to reimburse plaintiff for the costs of reconditioning the meat.

We need consider no other theory of plaintiff's case.

No reason has been given why under Fed.R.Civ.P. 61, 28 U.S.C.A., we should disturb the verdict or judgment.

For the reasons given, the judgment is affirmed.