T.C. Summary Opinion 2005-137

UNITED STATES TAX COURT

MARY JANE SYLVE, Petitioner, AND NORMAN V. SYLVE, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13881-02S.             Filed September 19, 2005.

    <u>Jonathan P. Decatorsmith</u>, for petitioner.

    Norman V. Sylve, pro se.

    <u>Jason W. Anderson</u>, for respondent.

    CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for 1998.  Rule references are to the Tax
Court Rules of Practice and Procedure.  The decision to be

entered is not reviewable by any other court, and this opinion should not be cited as authority.

In a notice of deficiency dated May 29, 2002, respondent determined a deficiency of $9,438 in petitioner's 1998 Federal income tax, a $1,122 section 6651(a)(1) addition to tax, and a $1,888 section 6662(a) accuracy-related penalty.  The issues for decision are:  (1) Whether petitioner, who filed a 1998 joint Federal income tax return with intervenor, signed that return under duress; if not, then (2) whether petitioner is entitled to relief from joint and several liability under section 6015;[1] if not, then (3) whether petitioner's failure to file a timely 1998 return was due to reasonable cause; and (4) whether the underpayment of tax required to be shown on petitioner's 1998 return is a substantial understatement of income tax.

Background

Some of the facts have been stipulated and are so found.  At the time the petition was filed, petitioner resided in Hickory Hills, Illinois.

---

[1]  References to sec. 6015 are to that section as added to the Internal Revenue Code by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201, 112 Stat. 734.  Sec. 6015 generally applies to any liability for tax arising after July 22, 1998, and any liability for tax arising on or before July 22, 1998, that remains unpaid as of such date.  See Cheshire v. Commissioner, 115 T.C. 183, 189 (2000), affd. 282 F.3d 326 (5th Cir. 2002); H. Conf. Rept. 105-599, at 251 (1998), 1998-3 C.B. 747, 1005.

Petitioner and intervenor were married on August 6, 1977. They have four children. Petitioner and intervenor separated in September 1997, and their marriage was dissolved by a February 24, 2000, judgment entered by the Circuit Court of Cook County, Illinois. Throughout the divorce proceedings, petitioner was represented by Enrico J. Mirabelli, Esquire (Mr. Mirabelli), and his associate Tracy M. Rizzo, Esquire (Ms. Rizzo). Intervenor was also represented by counsel during the divorce proceedings. As of the date of their divorce, petitioner and intervenor had amassed a substantial amount of what is repeatedly referred to in the record as "marital debts."

At all times relevant, intervenor was employed by United Parcel Service (UPS). Petitioner, who at the time had only a high school education, was employed only for a brief period during her marriage to intervenor. For the most part, according to her trial testimony, during her marriage to intervenor, petitioner "stayed at home raising the children". Following her divorce, petitioner was employed as a teacher's assistant.

During their marriage, petitioner and intervenor maintained a joint checking account. For the most part, they made mutual decisions regarding their marital finances and major expenditures. However, petitioner generally paid the monthly bills and signed most of the checks from the joint checking account.

At some point during the divorce proceedings, petitioner was informed by Mr. Mirabelli that intervenor had funds on deposit in an individual retirement account maintained with Dean Witter Reynolds, Inc. (the Dean Witter IRA), that could be used to pay the marital debts. On April 1, 1998, the divorce court entered a document styled "Qualified Domestic Relations Order Dean Witter Reynolds, Inc." (the QDRO). The QDRO assigns intervenor's entire interest in the Dean Witter IRA to petitioner. The QDRO also directs the "immediate distribution of said interest/participant share" to petitioner "in two parts"; i.e., 20 percent was to be withheld on petitioner's behalf for Federal income tax purposes, and "the balance shall be distributed" to petitioner. By letter dated April 3, 1998, intervenor's divorce counsel transmitted the QDRO to Dean Witter Reynolds, Inc. (Dean Whitter) with specific instructions that the proceeds from the Dean Witter IRA be forwarded to Mr. Mirabelli on behalf of petitioner.

A Distribution Request Form Account Termination (the form) was processed by Dean Witter several weeks later. The form is signed, but not dated, by intervenor. The form proceeds as though intervenor, rather than petitioner, was the "participant" with respect to the Dean Witter IRA and directs the proceeds of the account to be paid to petitioner, without any amounts withheld for Federal income tax purposes.

On May 7, 1998, Dean Witter issued a check to petitioner, in care of her attorney, Mr. Mirabelli, for $25,211, which represented the entire balance of the Dean Witter IRA. On May 14, 1998, these funds were deposited in an escrow account in the name of petitioner and, as petitioner's agent, Mr. Mirabelli. Intervenor did not directly receive any proceeds from the Dean Witter IRA.

Over the years, petitioner and intervenor filed joint Federal income tax returns during their marriage. Petitioner did not participate in the preparation of their joint tax returns, but she generally "glanced over" them at or about the time she signed them.

In 1999, petitioner and intervenor signed a Tax Indemnification Agreement in which, among other things, they agreed to file joint 1998 Federal and State income tax returns. The Tax Indemnification Agreement stated, in part, that neither one of them: (1) Has "any knowledge as to the accuracy of the information supplied by the other relative to the preparation of said returns", and (2) will hold the other responsible for any additional taxes, interest, or penalties as a result of the information each supplied with respect to their joint returns.

Taking into account an extension request submitted by intervenor, the 1998 joint return was due on or before August 15, 1999. That return was completed by intervenor's paid tax return

preparer on July 15, 1999. The income reported on that return does not include the distribution from the Dean Witter IRA. Intervenor signed the 1998 return on July 19, 1999. He presented the return to petitioner for her signature, but she refused to sign it without first having the return reviewed by Ms. Rizzo. To that end, intervenor mailed the return to his divorce attorney, who in turn, forwarded the return to Ms. Rizzo. On September 10, 1999, Ms. Rizzo sent the 1998 return to petitioner, which she signed on September 17, 1999, and apparently returned to Ms. Rizzo. According to Ms. Rizzo, the original signed 1998 returns (Federal and State) were inadvertently put into the divorce proceeding's discovery files and remained there until discovered after their due dates had passed. In a letter dated October 29, 1999, Ms. Rizzo: (1) Notified intervenor's divorce counsel that the returns were that day sent to the Internal Revenue Service, and (2) asked to be notified "if the Internal Revenue Service or the Illinois Department of Revenue issue any sort of penalties against Mr. & Mrs. Sylve for this late filing". The 1998 return was received and filed by respondent on October 31, 1999.

The Marital Settlement Agreement (settlement agreement) which was incorporated into the divorce judgment required intervenor to pay $2,500 per month to petitioner as monthly family support, which payments continued at all times relevant to

this proceeding. Petitioner was also granted "sole and exclusive ownership of the [marital residence], free and clear of any claim or interest by [intervenor]".[2]

The settlement agreement further provided, in relevant part, that: (1) Petitioner "shall be awarded as her sole and exclusive property the escrow account currently held by her attorneys free and clear of any claim made by [intervenor]", (2) with the exception of approximately $9,300 in the children's tuition arrearage, the funds in petitioner's escrow account would be used to pay marital debts, (3) intervenor was "solely and exclusively responsible" for the children's tuition arrearage, (4) petitioner and intervenor each pay one-half of the current and future school tuition for the minor children, and (5) the refund claimed on the 1998 joint return be used to fix the roof of the marital residence.

On September 6, 2000, respondent sent to petitioner and intervenor a notice of proposed adjustments with respect to their 1998 return. The notice stated, in part, that the Dean Witter IRA distribution was includable in their 1998 income.

On March 16, 2001, petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief, requesting the

---

[2] At the time of the divorce, the marital residence was worth approximately $175,000. The remaining unpaid mortgage on the residence at that time was approximately $20,000.

relief contemplated by subsections (b), (c), and (f), of section 6015.

In addition to other determinations made in the above-referenced notice of deficiency dated May 29, 2002, respondent determined that petitioner was not entitled to relief under section 6015.

Discussion

A. Duress

Subject to a variety of conditions and limitations not relevant here, spouses "may make a single return jointly of income taxes". Sec. 6013(a). If for any year they do, then "the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several." Sec. 6013(d)(3).

Petitioner and intervenor signed and filed a joint 1998 Federal income tax return. Petitioner now claims that she should not be held liable for the subsequently determined deficiency resulting from an examination of that return because she signed that return under duress.

If what purports to be a joint Federal income tax return is signed under duress by a taxpayer, the document does not constitute a joint return, joint and several liability for the tax reported on the return does not arise, and this Court has jurisdiction to redetermine the taxpayer's liability on the basis

of a separate return.  See <u>Stanley v. Commissioner</u>, 81 T.C. 634, 637-639 (1983); <u>Brown v. Commissioner</u>, 51 T.C. 116, 119 (1968) (and cases cited therein).

We see little point in burdening this opinion with a detailed discussion identifying and applying factors considered by this and other Federal courts when addressing a taxpayer's claim that a Federal income tax return has been signed under duress.  Suffice it to note that an act performed at the advice of legal counsel is wholly inconsistent with a subsequent claim that the consequences of that act can be avoided by a claim of duress, and we are aware of no authority that suggests otherwise.

Petitioner refused to sign the 1998 return when directly asked to do so by intervenor.  Nevertheless, upon advice of counsel she eventually signed the 1998 return, even if her decision to do so was prompted, as her brief suggests, "in order to facilitate the divorce settlement and in order to keep her children * * * in school".  Petitioner's claim that she signed the 1998 joint return under duress is rejected.

B.  <u>Section 6015 Relief</u>

As previously stated, spouses filing a joint Federal income tax return are jointly and severally liable for taxes shown on the return or found to be owing.  Sec. 6013(d)(3).  Relief from joint and several liability is available to certain taxpayers under section 6015.

There are three types of relief available under section 6015. In general section 6015(b)(1) provides full or apportioned relief from joint and several liability, section 6015(c) provides proportionate tax relief to divorced or separated taxpayers, and section 6015(f) provides equitable relief from joint and several liability in certain circumstances if neither section 6015(b) nor (c) is available.

Petitioner is not entitled to relief under section 6015(b) or (c) for at least two reasons. First, the unreported income, that is, the distribution from the Dean Witter IRA, is, contrary to the suggestions made in her brief, attributable to petitioner. The QDRO assigns 100 percent of intervenor's interest in the Dean Witter IRA to petitioner. That being the situation, the distribution from the Dean Witter IRA is considered a distribution to her. See sec. 408(d)(6); cf. Jones v. Commissioner, T.C. Memo. 2000-219. Second, even if the distribution were attributable to intervenor, knowledge of that distribution precludes relief under section 6015(b) or (c). Cheshire v. Commissioner, 115 T.C. 183, 195 (2000), affd. 282 F.3d 326 (5th Cir. 2002); see also King v. Commissioner, 116 T.C. 198 (2001). Petitioner's position that she was unaware of the circumstances surrounding the distribution ignores a fundamental rule of agency; i.e., knowledge to the agent is imputed to

the principal.  See <u>Hartman v. Prudential Ins. Co. of Am.</u>,
9 F.3d 1207, 1212 (7th Cir. 1993); <u>All States Trailer Co. v.
American Ins. Co.</u>, 234 F.2d 783, 786 (7th Cir. 1956).
Petitioner's divorce counsel were certainly aware of the
distribution, and their knowledge is imputed to petitioner.
Consequently, petitioner is not entitled to relief under section
6015(b) or (c), and we turn our attention to petitioner's claim
for relief under section 6015(f).

     If a taxpayer is not entitled to relief under section
6015(b) or (c), then the taxpayer, under procedures prescribed by
respondent, is entitled to equitable relief if "taking into
account all the facts and circumstances, it is inequitable to
hold the individual liable for any * * * deficiency".  Sec.
6015(f)(1);  <u>Washington v. Commissioner</u>, 120 T.C. 137, 146-147
(2003).

     We review the Commissioner's determination to deny section
6015(f) equitable relief using an abuse of discretion standard
and defer to the Commissioner's determination unless it is
arbitrary, capricious, or without sound basis in fact.  <u>Jonson v.
Commissioner</u>, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th
Cir. 2003).

     As required by section 6015(f), the Commissioner has
prescribed procedures and factors to be used by the Internal
Revenue Service to determine whether a spouse qualifies for

relief under that subsection.  At the time that petitioner requested relief under section 6015(f), those procedures were set forth in Rev. Proc. 2000-15, 2000-1 C.B. 447.  (Subsequent modification of these procedures by Rev. Proc. 2003-61, 2003-2 C.B. 296, does not affect the resolution of this case.)

Certain threshold conditions must be satisfied before the Commissioner will consider a request for relief under section 6015(f).  See Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448.  Respondent does not contend that petitioner fails to satisfy these threshold conditions for the year here under consideration, and we focus our attention on other parts of the controlling revenue procedure.

As in this case, if the requesting spouse satisfies the threshold conditions of Rev. Proc. 2000-15, sec. 4.01, and relief is unavailable under Rev. Proc. 2000-15, sec. 4.02, the Commissioner looks to Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, to determine whether the taxpayer should be granted equitable relief.

Section 4.03 of the revenue procedure provides a partial list of positive and negative factors that the Commissioner is to take into account when considering whether to grant an individual full or partial equitable relief under section 6015(f).  Rev. Proc. 2000-15, sec. 4.03(1) lists the following six factors weighing in favor of granting relief for an unpaid liability:

(1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse would suffer economic hardship if relief is denied; (3) the requesting spouse was abused by the nonrequesting spouse; (4) the requesting spouse did not know or have reason to know that the reported liability would not be paid; (5) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability; and (6) the unpaid liability is attributable to the nonrequesting spouse.  Giving petitioner the benefit of the doubt, three of these factors weigh in favor of relief.

Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449, lists the following six factors weighing against granting relief for an unpaid liability:  (1) The unpaid liability is attributable to the requesting spouse; (2) the requesting spouse knew or had reason to know that the reported liability would be unpaid at the time the return was signed; (3) the requesting spouse significantly benefited (beyond normal support) from the unpaid liability; (4) the requesting spouse will not suffer economic hardship if relief is denied; (5) the requesting spouse has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates; and (6) the requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the

unpaid liability.  Again, giving petitioner the benefit of the doubt, four of the factors weigh against granting relief.

The lists of factors are not exhaustive, no single factor is determinative, and all factors should be considered and weighed appropriately.  Rev. Proc. 2000-15, sec. 4.03.  Taking into account the above-listed factors as applied to the facts in this case, we conclude that respondent did not act arbitrarily, capriciously, or without sound basis in fact in denying petitioner's request for equitable relief under section 6015(f).  Consequently, respondent's denial is not an abuse of discretion.

C.  Addition to Tax and Penalty

Respondent imposed a section 6651(a)(1) addition to tax upon the ground that the 1998 return was not timely.  Respondent also imposed a section 6662(a) accuracy-related penalty upon the ground that the underpayment of tax required to be shown on the 1998 return is a substantial understatement of income tax.  Respondent bears the burden of production with respect to each of these items.  See sec. 7491(c).

1.  Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) provides for an addition to tax in an amount equal to 5 percent of the amount of the tax shown on the return for the first month, plus an additional 5 percent for each additional month or fraction of a month during which the failure to file continues, up to a maximum of 25 percent of the tax in

the aggregate. This addition to tax is applicable unless the taxpayer can demonstrate that the failure is due to a reasonable cause and not due to willful neglect.

Petitioner agrees that the 1998 return was not timely. Nevertheless, she argues against the application of the addition to tax because it was "intervenor and his personal accountant that prepared the 1998 return untimely". Petitioner's position in this regard ignores much of the undisputed evidence placed in the record on this point, especially a joint exhibit that establishes that the return was untimely because petitioner's divorce attorney misplaced the return in the divorce proceeding's discovery file. Respondent has sustained his burden of production with respect to the imposition of the addition to tax. Petitioner has failed to establish that the failure to file the return on a timely basis was due to reasonable cause and not willful neglect. See United States v. Boyle, 469 U.S. 241 (1985) (taxpayers have a personal and nondelegable duty to file a timely return, and reliance on a professional to file a return does not provide reasonable cause for an untimely filing). Respondent's imposition of the section 6651(a) addition to tax is sustained.

### 2. Section 6662(a) Penalty

Section 6662(a) imposes an accuracy-related penalty of 20 percent of any portion of an underpayment of tax that is attributable to a substantial understatement of income tax. Sec.

6662(b)(2), (d).  An understatement of income tax is a substantial understatement of income tax if it exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the taxpayer's return.  Sec. 6662(d)(1).

Ignoring conditions not relevant here, for purposes of section 6662, an understatement is defined as the excess of the amount of the tax required to be shown on the taxpayer's return over the amount of the tax which is shown on the return.  Sec. 6662(d)(2)(A).  In this case, for purpose of section 6662, the difference between the amount of tax required to be shown on the 1998 return and the amount of tax shown on the return exceeds the greater of 10 percent of the tax required to be shown on the 1998 return or $5,000.  Consequently, respondent has satisfied his burden of production with respect to the accuracy-related penalty based on a substantial understatement.

However, section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.[3]  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case

---

[3]  While the Commissioner bears the burden of production under sec. 7491(c), the taxpayer bears the burden of proof with respect to reasonable cause.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

basis, taking into account all the pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.

Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the disputed item.  See United States v. Boyle, supra; see also Estate of Young v. Commissioner, 110 T.C. 297, 317 (1998).  Good faith, reasonable reliance on the advice of an independent, competent professional as to the tax treatment of an item may meet this requirement. See United States v. Boyle, supra; sec. 1.6664-4(b), Income Tax Regs.; see also Richardson v. Commissioner, 125 F.3d 551 (7th Cir. 1997), affg. T.C. Memo. 1995-554; Ewing v. Commissioner, 91 T.C. 396, 423 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991).

It is obvious to us that petitioner (and intervenor for that matter) relied entirely on the advice and recommendations of counsel with respect to the filing of the 1998 joint return.  We are satisfied that, under the circumstances, her (their) reliance was reasonable and in good faith.  Accordingly, we hold that petitioner is not liable for a section 6662(a) accuracy-related penalty for 1998.

Reviewed and adopted as the report of the Small Tax Division.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and the addition to tax under section 6651(a)(1) and for petitioner as to the accuracy-related penalty under section 6662(a).